UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

NORCAL GOLD, INC., a California corporation,

    Plaintiff-in-Interpleader,

    v.

STEVE C. LAUBLY; BERNADETTE LAUBLY; UNITED STATES OF AMERICA; and INTERNAL REVENUE SERVICE,

    Defendants-in-Interpleader.

NO. CIV. 07-192 WBS KJM

MEMORANDUM AND ORDER RE: MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY ADJUDICATION

----oo0oo----

    This is an interpleader action involving a dispute over the remaining balance plaintiff-in-interpleader Norcal Gold, Inc., doing business as Re/Max Gold ("Norcal"), potentially owes pursuant to an asset purchase agreement. Norcal filed this action after receiving competing claims from defendants-in-interpleader Steve C. and Bernadette Laubly and the United States and Internal Revenue Service (IRS).

1

I.   Factual and Procedural Background

     For the tax years of 1997, 1998, 2000, and 2001, Steve Laubly individually filed income tax returns (Form 1040) and, based on his signed tax returns, a delegate of the Secretary of Treasury made assessments against him for unpaid federal income tax liabilities, penalties, and interest. (U.S.'s Mem. in Support of Motion for Jdmt. on the Pleadings ("U.S.'s Mem.") Exs. A-D.) As of December 20, 2006, the unpaid federal taxes, assessed and accrued interest, and other statutory additions totaled $69,946.22. (U.S.'s Answer ¶ 1.) The IRS recorded Notices of the Federal Tax Liens in Fresno County on April 1, 2003 for the tax year of 1997 and on March 15, 2005 for the tax years of 1998, 2000, and 2001. (U.S.'s Mem. Exs. E-F.) On July 28, 2004, IRS Officer Dennis D. Stiffler sent to Laubly, via certified mail, a Notice of Intent to Levy for the tax years of 1997, 1998, 2000, and 2001. (Stiffler Decl. ¶ 4.)

     On August 4, 2006, Norcal and the Laublys entered into an asset purchase agreement ("Agreement") in which Norcal agreed to pay the Laublys $100,000 in exchange for the Laublys' tangible and intangible assets used in their real estate brokerage business, Sundance Real Estate. (U.S.'s Mem. Ex. G.) The Agreement obligated Norcal to pay $50,000 on the August 24, 2006 closing date and the remaining $50,000 on January 15, 2007. (Stiffler Decl. ¶¶ 2, 6.) The Laublys also covenanted that they had timely paid all taxes and that there were no liens or encumbrances on the assets. (Id. at ¶ 4.)

     On November 21, 2006, Stiffler hand-delivered two tax collection notices (IRS Letters 3174 and 3164(B)) to Laubly's

1  residence.  (Id. at ¶ 5, Exs. 1-2.)  In a phone conversation with
2  Laubly that same day, Stiffler informed him that the IRS would
3  issue a levy on the proceeds of the Laublys' sale of their
4  business.  (Id. at ¶ 6.)  Eight days later, the IRS received a
5  seven-page letter from Laubly that attacked the government's
6  authority to levy a tax on private employment income and to
7  enforce a lien to collect such tax.  (Id. at Ex. 3.)

8  　　　　　　On November 22, 2006, the IRS issued a Notice of Levy
9  to Norcal, which stated that the IRS had a levy against Laubly
10 for $69,946.22.  (Compl.-in-Interpleader ¶ 11; U.S.'s Mem. Ex.
11 H.)  Four days later, Laubly sent Norcal a letter claiming that
12 the Notice of Levy was "unlawful, unconstitutional and improper."
13 (Id. at ¶ 13.)  The letter also stated that if Norcal paid the
14 $50,000 balance to the IRS, Laubly would consider Norcal as
15 "choosing to engage in collusion and conspiracy, to defraud [him]
16 and engage in conversion of his personal property . . . ."  (Id.)
17 On January 19, 2007, the IRS issued a Final Demand for Payment to
18 Norcal.  (U.S.'s Mem. Ex. I.)

19 　　　　　　On January 30, 2007, Norcal initiated this interpleader
20 action seeking to force the defendants-in-interpleader to
21 litigate their rights to the $50,000 balance due under the
22 Agreement.  Norcal also alleges claims for recision, restitution,
23 and damages for fraud against the Laublys.  In its Answer, the
24 United States asserted a claim to any funds Norcal owes Laubly
25 pursuant to the Agreement.  While the Laublys filed a pro se
26 answer to the complaint-in-interpleader, they neither asserted a
27 claim to the funds nor answered the United States' cross-claim.
28 　　　　　　Pursuant to Federal Rule of Civil Procedure 12(c), the

3

United States now moves for judgment on the pleadings to establish that 1) the levy the IRS asserts against Laubly is lawful and 2) the United States assumes all rights Laubly has under the Agreement.  Alternatively, the United States moves for summary adjudication on the same issues.  Norcal filed a non-opposition to the United States' motion.[1]

II. Discussion

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  For purposes of Rule 12(c), the pleadings are "closed" only when the parties have filed all of the pleadings Rule 7(a) contemplates.  See id. Rule 7(a) ("There shall be a complaint and an answer; . . . an answer to a cross-claim, if the answer contains a cross-claim . . . ."); In re Villegas, 132 B.R. 742, 745 (B.A.P. 9th Cir. 1991) ("Pleadings

---

[1] On January 31, 2008, nine days after opposition to the United States' motion was due, the Laublys filed a "Demand for a Jury Trial and Objection to the United State[s'] Request for Summary Judgment."  The entirety of the Laublys' objection to the United States' motion consisted of one conclusory sentence: "Defendants[in-interpleader] hereby respectfully move the court to deny the summary judgment requested by the United States on the basis that it will deny the defendants[in-interpleder] their civil rights, and their right to due process."  (Laublys' Demand for Jury Trial & Objection to U.S.'s Mot. for Summ. J. 2:6-9.)

The United States submitted its motion "upon the record and briefs on file" and requested that the court issue its order without oral argument.  E. Dist. of Cal. Local R. 78-230(h).  The court has determined that it does not need to hear oral argument, and accordingly decides the motion on the papers.  The Laublys were not entitled to oral argument because, even if the court construes their January 31, 2008 filing as an opposition to the United States' motion, it was not timely filed.  See id. at Rule 78-230(c) ("No party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party.").

4

are not closed until at least an answer has been filed .... Judgment on the pleadings may not be entered where no answer has been filed."). Accordingly, because the Laublys have not answered the United States' cross-claim, Rule 12(c) does not permit the United States to move for judgment on the pleadings.

A party can, however, move for summary adjudication "at any time after the expiration of 20 days from the commencement of the action . . . ." Fed. R. Civ. P. 56(a). The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See id. Rule 56(a), (c); Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary adjudication is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary adjudication bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving

party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.

Once the moving party meets its initial burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading."  Fed. R. Civ. P. 56(e); Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  However, any inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Additionally, the court must not engage in credibility determinations or weigh the evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

"In an action to collect tax, the government bears the initial burden of proof.  The government, however, may satisfy this initial burden by introducing into evidence its assessment of taxes due" and providing a "minimal factual foundation" for the assessment.  Oliver v. U.S., 921 F.2d 916, 919-20 (9th Cir. 1990) (internal citations omitted).  Unless the assessment is "without rational foundation or is arbitrary," "introduction of the assessment establishes a *prima facie* case" for the government.  Id.  Once "the government satisfies its initial burden by introducing the assessment . . . , the taxpayer then has the burden of proof" to challenge the government's claim that

6

1 the tax is due.  Id.

2   The United States has produced Certificates of
3 Assessments, Payments, and Other Specific Matters (Form 4340)
4 ("Certificates of Assessments") for the tax years of 1997, 1998,
5 2000, and 2001.  (U.S.'s Mem. Exs. A-D; see also U.S.'s Answer 7
6 (Laubly owes $69,946.22 as of December 20, 2006).)  Factually,
7 the assessments were based on liabilities established in Laubly's
8 individually-filed income tax returns (Form 1040), which he
9 signed under penalty of perjury.  (U.S.'s Mem. Exs. A-D.)  The
10 Certificates of Assessments also establish that the tax
11 liabilities were properly assessed by a duly authorized Secretary
12 of Treasury, 26 U.S.C. §§ 6201-6203, and that the notices and
13 demands for payment of the liabilities were properly sent to
14 Laubly and included the "23c date."  Id. §§ 6303(a), 6321; Huff
15 v. United States, 10 F.3d 1440, 1145-46 (9th Cir. 1993)
16 (requiring that Certificates of Assessments include the "23C
17 date").

18   The United States' recorded tax liens are also valid.
19 (See U.S.'s Mem. Exs. E, F.)  "When a taxpayer neglects or
20 refuses to pay a federal tax liability after assessment, notice,
21 and demand for payment, § 6321 imposes a tax lien in favor of the
22 government for 'all property and rights to property, whether real
23 or personal' belonging to the taxpayer." United States v.
24 Cunningham, No. 04-2483, 2006 WL 1628010, at *5 (E.D. Cal. June
25 7, 2006) (quoting § 6321) (citing Drye v. United States, 528 U.S.
26 49, 55 (1999)).

27   While Laubly does not oppose the United States' motion
28 for summary adjudication, he has stated his position regarding

7

the IRS levy in the Answer he filed with his wife.  Laubly alleges that the "IRS has no authority to make plaintiff[-in-interpleader] or defendant[-in-interpleader] Laubly liable for the subject tax within the several states" and that the levy is an "unlawful security filed in the public record against defendant[-in-interpleader] Laubly."  (Laublys' Answer ¶¶ 4-5.) In his detailed letter to the IRS, Laubly also elaborates that 1) "Congress does not have the authority to levy a direct tax on" private employment income; 2) the Secretary of the Treasury does not have the authority to assess private employment earnings as income; and 3) the IRS does not have the authority to place a lien on property or enforce income and employment tax laws. (Stiffler Decl. Ex. 3.)

However, because Laubly does not attack the procedural validity of the assessments, any claims that can be attributed to him are not cognizable in this action.  Specifically, 28 U.S.C. § 2410 permits "'actions challenging the procedural aspects of tax liens, but not the merits of the underlying tax assessments.'" Huff, 10 F.3d at 1145-46 (quoting Arford v. United States, 934 F.2d 229, 232 (9th Cir. 1991)).  "To the extent that [Laubly] challenge[s] the merits of [his] underlying requirement to pay [the] taxes[,] . . . the district court . . . does not have jurisdiction."  James v. United States, 970 F.2d 750, 754 (10th Cir. 1992); see also id. ("'[W]hatever narrow jurisdiction may lie under § 2410 does not extend to an omnibus challenge to the authority of the Internal Revenue Service to function.'") (citation omitted).

Laubly's arguments do not attack the procedural

8

validity of the assessments because he neither denies that he received the Certificates of Assessments and requisite notices nor "present[s] evidence suggesting that the information in the [Certificates of Assessments or notices was] inaccurate." See Huff, 10 F.3d at 1145 ("This court has held that claims regarding both the failure by the IRS properly to assess a tax and to provide a taxpayer with a copy of an assessment under § 6203, and the failure to send a notice of assessment and a demand for payment under § 6303(a) present procedural challenges to the validity of a lien and are therefore cognizable under § 2410."); see also id. ("[The Certificates of Assessments] provide[] at least presumptive evidence that a tax has been validly assessed under § 6203.") (citations omitted).

Laubly is also not entitled to seek an injunction against the IRS because "it has been established law that payment of the tax followed by a suit for refund constitutes an adequate remedy at law." Cool Fuel, Inc. v. Connett, 685 F.2d 309, 314 (9th Cir. 1982) (citing Bailey v. George, 259 U.S. 16 (1922)); see also Pulliam v. Allen, 466 U.S. 522, 537 (1984) (an inadequate remedy at law is a prerequisite to an injunction).

Accordingly, because there is no genuine issue of material fact with respect to the United States' claim that the IRS levy is lawful, this court must grant the United States' motion for summary adjudication on that issue.

"In a levy proceeding, the IRS '"steps into the taxpayer's shoes,"' [and it] acquires whatever rights the taxpayer himself possesses." U.S. v. Nat'l Bank of Commerce, 472 U.S. 713, 725-26 (1985) (citations omitted). When a taxpayer has

9

claims entitling him to money or property, "the government may foreclose upon the taxpayers' causes of action just as it could any other real or personal property.  A taxpayer's chose in action represents one of the taxpayer's assets, and the government has the right to pursue the action to judgment . . . ."  U.S. v. Stonehill, 83 F.3d 1156, 1160 (9th Cir. 1996).

Accordingly, because there is no genuine issue of material fact that the United States assumes all rights Laubly has under the Agreement, the court must also grant the United States' motion for summary adjudication on that issue.

IT IS THEREFORE ORDERED that the United States' motion for summary adjudication with respect to the validity of the IRS levy and its entitlement to any funds Laubly may recover under the Agreement be, and the same hereby is, GRANTED.

DATED:   February 1, 2008

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE